**United States District Court**
For the Northern District of California

1
2
3
4
5                    IN THE UNITED STATES DISTRICT COURT

6                FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    STANLEY J. MCDONALD,                    No. C -13-00285(EDL)

9              Plaintiff,              **ORDER DENYING PLAINTIFF'S**
                                       **MOTION FOR SUMMARY JUDGMENT**
10       v.                            **AND GRANTING DEFENDANT'S**
                                       **MOTION FOR SUMMARY JUDGMENT**
11   MICHAEL J. ASTRUE,

12             Defendant.
     _____/
13

14         On January 22, 2013, Plaintiff Stanley J. McDonald filed this suit under 42 U.S.C. § 405(g)

15   seeking judicial review of a decision denying his claims for disability insurance (SSDI) benefits

16   under Title II of the Social Security Act, 42 U.S.C. § 400 et seq.  Plaintiff subsequently moved for

17   summary judgment, asking the Court to reverse the final decision of the Commissioner and find him

18   disabled, or, alternatively, to remand the case for a new hearing.  Defendant filed a combined

19   opposition to Plaintiff's motion and cross-motion for summary judgment asking the Court to affirm

20   the Commissioner's decision.  Plaintiff filed a reply.   Both parties consent to proceeding before a

21   magistrate judge.

22         For the reasons set forth below, the Court denies Plaintiff's motion for summary judgment

23   and grants Defendant's cross-motion for summary judgment.

24

25   **I.    Factual Background**

26

27         A.    General Background

28

     Plaintiff was born in 1948, and was 61 at the time of his date last insured.  He has a high

school education and has worked as a smog technician and a welder.  Plaintiff's disability claim is based on his joint and back problems, accumulated over his years of working as a welder and specifically when he injured himself on the job lifting a heavy plate of metal over a pipe.  AR 51. He states that if he stands still for more than one and a half to two minutes he can feel the pain in his back radiate across his hips, lower back, and spine.  AR 53.  Plaintiff states that he can sit for approximately 30 minutes before he instinctively rises, and can sit for about one to two hours at a time before he needs to get up and walk around.  AR 54, 57.  He testified that he can walk around normally and goes shopping and to the supermarket without a problem.  AR 57.  Plaintiff can lift and carry a 20-pound weight, but states that he cannot perform any overhead lifting.  Id.  He drives two or three times a week for around 30 minutes, and occasionally drives longer to see his grandchildren, whom he takes on outings.  AR 49, 61.  Plaintiff testified that he becomes distracted by pain after driving for more than an hour or 90 minutes.  AR 61.  He reports taking Tylenol with codeine approximately two to three times a week, and Tramadol (a non-narcotic pain reliever) four times a day.  AR 54, 57.  Plaintiff lives with his wife and their adult son and takes care of himself independently.  AR 63.  He likes cars and doing automotive research, and changes the oil in his own car, taking several breaks during the process.  AR 59, 63.

B.      Medical History

Plaintiff was last insured for disability benefits on December 30, 2009.  AR 173-74.

    1.      *Dr. Blackwell (Plaintiff's primary treating physician)*

Dr. Fred Blackwell is Plaintiff's orthopedist.  On August 8, 2004, shortly after Plaintiff reported his injury, Dr. Blackwell reported that physical examination of Plaintiff showed that he had good mobility with no evidence of motor or sensory disturbances and bilateral tenderness of the iliolumbar ligaments and intraspinous ligaments.  AR 271-72.  He reported that the recumbent straight leg raise test was 90 degrees bilaterally.  AR 272.  Dr. Blackwell gave his impression that

United States District Court
For the Northern District of California

1  Plaintiff suffered from musculoligamentous strain and sprain in his lumbosacral spine.  AR 272.  He

2  recommended that given the heavy nature of Plaintiff's work, he remain on temporary total

3  disability.  AR 272.

4        Dr. Blackwell recommended that Plaintiff get an MRI of his lower back to rule out a

5  herniated disk.  A September 4, 2004 MRI showed some degeneration in Plaintiff's lumbar spine.

6  The radiology report cites a possible hemangioma at L3 and two diffuse disk bulges between L3-L4

7  and L4-L5.  AR 230.  The bulge at L4-L5 abuts the right exiting nerve root but there is no

8  conclusive evidence of nerve impingement.  Id.

9        In December of 2004, Plaintiff reported to his physical therapist that he had bad days when

10  he had long periods of sitting.  AR 242.  In January of 2005, the physical therapist reported

11  educating Plaintiff on proper spinal alignment in a standing position.  AR 243.  On February 8,

12  2005, the physical therapist reported that Plaintiff had achieved five of six goals, but despite this his

13  pain remained just as severe, and that he had maximized the benefit from physical therapy.  AR 244.

14        Dr. Blackwell's notes throughout 2005 note persistent pain and guarded mobility.  AR 388,

15  395, 361, 360, 357.  There are notes from Dr. Blackwell sporadically from 2006, 2007, and 2008.

16  AR 266, 264, 263.  These notes refer to ongoing pain but note that range of motion and mobility

17  remain good, except for on June 13, 2008, where range of remotion was reported fair and mobility

18  impaired.  AR 265, 264, 263.  The diagnoses remained chronic lumbar strain and sprain.  AR 263.

19        Plaintiff continued to seek treatment with Dr. Blackwell after his date last insured, which

20  was December 30, 2009.  On December 14, 2010, Dr. Blackwell wrote that Plaintiff was doing

21  relatively well and remained stable, and had excellent back mobility.  AR 350.  The diagnosis

22  remained chronic strain and sprain.  Id.

23        On February 15, 2011, Dr. Blackwell completed a Medical Source Statement, which

24  maintained chronic lumosacral strain and sprain as the diagnosis, with symptoms of daily pain

25  aggravated with bending, lifting, and twisting.  AR 344.  Dr. Blackwell noted reduced range of

26  motion in the lumbar spine and that Plaintiff's impairments had lasted at least twelve months.  Id.

27  He identified difficulty sleeping and concentrating as symptoms that affected Plaintiff's physical

28  condition, and opined that patient's pain frequently interfered with the attention and concentration

1    necessary to perform work tasks. Id. at 345. Dr. Blackwell described Plaintiff's functional

2    limitations as follows: able to sit or stand for 30 minutes at a time, with a total of one to three hours

3    of sitting or standing in an 8-hour workday; capable of one hour of walking in an 8-hour workday;

4    needs a 5-minute walking break every 30 minutes and a job that allows shifting positions at will;

5    frequent lifting of weights less than 10 lbs., occasional lifting of 10 lb. weights; rare lifting of 20 lb.

6    weights, and no lifting of 50 lb. weights. Id. at 346. Dr. Blackwell estimated that Plaintiff would

7    have "good days" and "bad days" and would be absent about four days per month. Id. at 347. He

8    found Plaintiff capable of low stress jobs and jobs with "low physical demand." Id. at 345. Dr.

9    Blackwell concluded that Plaintiff's disability dates to August 2, 2004. Id. at 347.

10

11           2.      *RoseMarie Bowler, PhD*

12

13           On January 27, 2005, Plaintiff underwent a neuropsychological assessment with RoseMarie

14    Bowler, PhD. AR 246-58. She reported that testing showed Plaintiff had moderately impaired

15    visual-spatial memory and moderately to severely impaired visual-motor speed, and that Plaintiff

16    had mild depression, moderate anxiety, and moderate somatization. AR 251-254. She stated that he

17    gave his best effort on the testing but that he was upset and frustrated by his performance. AR 251,

18    256. Dr. Bowler diagnosed Plaintiff with: anxiety disorder NOS, mild; major depressive disorder

19    with anxiety; sleep disorder; early manganism from welding fumes; and peripheral neuropathy,

20    among other conditions. AR 256. In the Causation section of her report, Dr. Bowler discusses

21    neurotoxicity and exposure to welding chemicals and fine particulate dust. AR 256-57. She states

22    that Plaintiff "can no longer work at his prior level and can no longer compete on the open labor

23    market at the same level." AR 257. It does not appear that Dr. Bowler's report was sought for

24    Plaintiff's case here, as Dr. Bowler refers to "another worker's compensation case" regarding his

25    back injury. AR 251. She does not attribute any of Plaintiff's neurological, mental, or emotion

26    conditions to his back injury.

27

28           3.      *Jacklyn Chandler, PhD*

4

United States District Court
For the Northern District of California

1    On October 29, 2008, Plaintiff attended a psychological evaluation with Jacklyn Chandler,

2    PhD. AR 281-83. Dr. Chandler's functional assessment determined a mild difficulty with complex

3    instructions and maintaining attention and with working under normal stress. AR 284. Dr. Chandler

4    also notes Plaintiff's repaired cleft palate, which has led to some speech impairment that would lead

5    to some difficulty relating and interacting with supervisors, co-workers, and the public. Id.

6    However, as with the neuropsychological evaluation by Dr. Bowler, the evaluation of Plaintiff's

7    cognitive and emotional functioning seems related primarily to his exposure to manganese and other

8    toxic chemicals. Dr. Chandler notes in her report that "[a]t present, the claimant's main obstacle to

9    adequate work performance appears to be his medical condition. This matter is beyond the scope of

10   today's evaluation and is deferred to medical opinion." AR 285.

11

12        4.    *Dr. Fred Orcutt, M.D.*

13

14        On November 15, 2004, Plaintiff saw Dr. Fred Orcutt, an orthopedist. Dr. Ocrutt concluded

15   that Plaintiff had sustained a "permanent partial disability." AR 405. He noted that Plaintiff's

16   lumbar range of motion was decreased and he had restricted side bending. Id. He stated that

17   Plaintiff's disability precluded "Very Heavy Lifting." AR 406. Dr. Orcutt recommended physical

18   therapy but no medication, surgery, or other physician supervision. AR 409. He opined that

19   Plaintiff could return to work with the preclusion against very heavy lifting. Id.

20

21        5.    *State agency consulting physicians and psychologists*

22             a.    *Dr. Fariba Vesali, M.D.*

23

24        On August 28, 2008, Plaintiff had a consultative orthopedic exam with Dr. Fariba Vesali,

25   MD, at the request of the State Agency, acting on behalf of the Commissioner. She reported that

26   there were no significant findings to support Plaintiff's subjective complaints. AR 277-80. Dr.

27   Vesali reported negative straight leg raising bilaterally and no tenderness over the spine, and that

28   Plaintiff has normal muscle bulk and tone and good motor strength. AR 279.

5

United States District Court
For the Northern District of California

b.      *Dr. Tobey Leung, M.D.*

On August 6, 2009, Plaintiff had a consultative orthopedic exam with Dr. Tobey Leung, MD, at the request of the State Agency.  Dr. Leung reviewed records from Dr. Blackwell, the MRI report, and the report from Dr. Vesali.  Dr. Leung diagnosed Plaintiff with idiopathic chronic low back pain that persists despite conservative non-surgical management.  AR 298.  He stated that Plaintiff had a maximum standing/walking capacity of up to six hours, a maximum sitting capacity of up to six hours, and a maximum lifting/carrying capacity of 50 pounds occasionally and 25 pounds frequently.  AR 298.  Dr. Leung found postural limitations on climbing, balancing, stooping, kneeling, crouching, and crawling, and concluded that Plaintiff should not work at heights and around heavy machinery because a low back pain flare could put him at risk of fall and injury.  AR 298.

## II.      Procedural History

On April 22, 2009, Plaintiff applied for Disability Insurance Benefits, alleging disability beginning on July 24, 2004.  AR 152-53.  Plaintiff's claims were denied on September 2, 2009.  AR 88.  Plaintiff requested a hearing.  Administrative Law Judge Caroline H. Beers held a hearing on March 16, 2011, at which Plaintiff appeared and was represented by counsel Ashley Hansson and Betty Guerra.  AR 43-82. A vocational expert, Alina Sala, testified.  Id.  On April 20, 2011, the ALJ issued a decision denying benefits to Plaintiff, finding that he was not disabled as defined by Title II of the Social Security Act because he could perform jobs that existed in significant numbers in the national economy.  AR 16-24.  The ALJ's decision became the final decision of the Commissioner on October 18, 2012, when the Appeals Council denied Plaintiff's request for review.  AR 7.

## III.      ALJ Hearing

**United States District Court**
For the Northern District of California

A.   Plaintiff's Testimony

At the hearing, Plaintiff testified that he had worked for over 30 years as a welder and for about two years as an automobile technician.  AR 20.  He said that he could do no sitting, standing, lifting, or carrying and that these problems had persisted since 2004.  Id.  He stated that he could not work due to back, neck, and joint pain and can only stand for a few minutes at a time.  He testified that he can sit for approximately one hour at a time and lift up to 20 pounds, and that he is able to use a computer and drive for about an hour without stopping.  Id.  Plaintiff takes Tramadol 50 mg for back pain and acetaminophen with codeine for head pain, as needed.  Id.

Plaintiff testified as to his daily activities, including preparing simple meals, shopping, watching television, reading, and taking care of his personal grooming.  Id.  He is able to wash and wax his truck but his wife and adult son do most other household chores.  Id.  He spends time with his grandchildren and takes them on outings.  Id.  Plaintiff testified that he had no difficulties with instructions, stress, or authority figures.  Id.

B.   Vocational Expert

Vocational expert Alina Sala testified at the hearing. She testified that Plaintiff's past work as a smog checker and a welder is no longer available to a person of his residual functional capacity, and the ALJ accepted that testimony and concluded that Plaintiff was not able to perform any of his past relevant work.  AR 22-23.  The ALJ asked the vocational expert whether jobs existed in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity, and the vocational expert testified that given all of those factors, the individual would be able to perform the requirements of representative occupations such as: check-in production clerk, linen room attendant/stock order filler, and stacker.  Id. 23-24.  The vocational expert included an erosion of between 5% and 30% of the number of these jobs existing in the national economy due to Plaintiff's overhead reaching limitation.  Id. at 24.

**IV.    ALJ Decision**

On April 20, 2011, the ALJ concluded that Plaintiff was not disabled and issued a written decision.  AR 16-24.  The ALJ described the give-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. 404 § 1520(a).

1.    Steps One and Two of the Sequential Evaluation

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act until December 30, 2009.  AR 18.  She also found that Plaintiff had not engaged in substantial gainful activity during the period from his alleged onset date (July 24, 2004) and his date last insured.  AR 18.

The ALJ found that Plaintiff had a severe impairment, lumbar strain and sprain and neck pain.  AR 18.  The medical evidence established that Plaintiff had limitations in his capacity to perform basic work activities due to his severe physical impairment.  AR 18-19.  The ALJ addressed the other health issues in the record, including Plaintiff's past diagnosis of and treatment for carpal tunnel syndrome, as well as his neuropsychological examination by Rosemarie Bowler, and concluded that neither constituted a severe medically determinable impairment.  AR 18.

2.    Step Three of the Sequential Evaluation

The ALJ concluded that plaintiff's impairment or combination of impairments did not meet or medically equal one of the listed impairments in the regulations.  AR 19.  Instead, the ALJ found that Plaintiff had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) except Plaintiff can climb stairs, balance, stoop, crouch, and kneel occasionally, but not climb ladders, work around heavy machinery or at unprotected heights, or perform bilateral overhead reaching.  AR 19.  In making this finding, the ALJ considered Plaintiff's symptoms and the extent that the symptoms could reasonably be accepted as consistent with the objective medical

United States District Court
For the Northern District of California

8

1    evidence and other evidence as required by the regulations.  AR 19.  The ALJ also considered

2    opinion evidence.  AR 19.

3

4         The ALJ stated that he followed a two step process in which it must first be determined

5    whether there was an underlying medically determinable physical or mental impairment that could

6    reasonably be expected to produce Plaintiff's pain or other symptoms.  AR 19.  If such an

7    underlying medically determinable impairment has been shown, the ALJ must evaluate the intensity,

8    persistence, and limiting effects of Plaintiff's symptoms to determine the extent to which they limit

9    Plaintiff's functioning.  AR 19.

10        Based on Plaintiff's testimony about his work history and his daily life, the ALJ determined

11   that Plaintiff's medically determinable impairment could reasonably be expected to cause the

12   alleged symptoms.  AR 20.  However, the ALJ also found that Plaintiff's statements concerning the

13   intensity, persistence, and limiting effects of the symptoms was not credible to the extent that they

14   were inconsistent with the ALJ's residual functional capacity assessment.  AR 20.

15        The ALJ primarily relied upon the medical evidence to reach her conclusion that Plaintiff is

16   not disabled because he is capable of a wide range of less demanding work.  AR 20.  She noted that

17   a September 2004 MRI of Plaintiff's lower back revealed two diffuse disc bulges but no

18   impingement on the nerve.  AR 20.  The ALJ stated that Dr. Fred Blackwell, Plaintiff's primary

19   treating source, recommended on August 4, 2004 (the first examination following Plaintiff's claimed

20   date of onset) that Plaintiff should not do his usual heavy work, but did not recommend that all work

21   be avoided.  AR 20.  That is the only work function recommendation made by Dr. Blackwell until

22   the Medical Source Statement made in 2011; Plaintiff retired in 2006.  AR 20-21.  The ALJ noted

23   that Plaintiff continued to see Dr. Blackwell approximately every six months, and that Dr.

24   Blackwell's comments were consistent:  that Plaintiff is doing fairly well, is effectively medicated,

25   has a restricted range of motion in his back, and has a chronic lumbosacral strain and sprain.  AR 21.

26

27        The ALJ then recounted the medical evidence from the other practitioners who examined

28   Plaintiff and/or reviewed his records.  She noted that Dr. Orcutt, who reviewed Plaintiff's records in

9

early 2005, had concluded that his impairments precluded very heavy lifting.  AR 21.  The ALJ also

discussed the vocational assessment performed in May of 2005 by Howard Stauber, who reviewed

the reports of Dr. Blackwell and Dr. Orcutt, and identified a number of jobs that Plaintiff could do,

including bench assembly helper positions, bench welding positions, and delivery driver positions.

AR 21.  The ALJ noted that Plaintiff was examined by two state agency physicians board certified in

physical medicine and rehabilitation, Dr. Vesali and Dr. Leung.  Dr. Vesali, who examined Plaintiff

on August 28, 2008, observed that Plaintiff did not have any trouble getting on or off the exam table

or putting on his shoes, and was able to walk with a normal gate.  Plaintiff did not have any spinal

tenderness and his motor strength and sensation were normal.  AR 21.  She concluded that Plaintiff

was capable of the full range of medium work.  Dr. Leung, who examined Plaintiff in August of

2009, concluded that Plaintiff was capable of a reduced range of medium work, but should not work

around heights or heavy machinery.  AR 21.

The ALJ then addressed Dr. Blackwell's medical source statement, which she rejected

because it was "not well-supported by medically acceptable clinical and laboratory diagnostic

techniques and it is inconsistent with other substantial evidence in the record, including Dr.

Blackwell's own clinical notes."  AR 22.  In addition, the ALJ noted that the statement was prepared

in 2011, long after Plaintiff's date last insured in December of 2009.  The ALJ assigned great weight

to the opinions of the two state agency physicians who examined Plaintiff and found that their

opinions were well supported by the medical evidence and they are familiar with the Social Security

Program requirements.  AR 22.

The ALJ observed that Plaintiff's 2004 MRI was mild and that the clinical signs reported by

all examining physicians, including Dr. Blackwell, were also mild.  AR 22.  Plaintiff's medications

are limited and appear to be effective in moderating his back pain. (The ALJ stated that the

medications were non-narcotic; however, Plaintiff reports taking Tylenol with codeine, a narcotic

medication, two to three times a week, as needed.)  AR 22, 54.  The ALJ noted the conservative

treatment Plaintiff has received and the lack of evidence that any less conservative treatment, such

as steroid injections or surgery, has been attempted.  AR 22.  She also observed that there is no

evidence that Plaintiff has tried to perform work more consistent with his physical capability.  AR

22.

In light of those factors, the ALJ found that Plaintiff's allegations of disabling pain were not fully credible or reliable, because the medical evidence did not support the allegations, his testimony regarding his pain was not fully credible, and the management of his condition was "routine, conservative, and effective."  AR 22.  She found that no treating or evaluating physician reliably found Plaintiff disabled from work.

3.     Step Four of the Sequential Evaluation

The ALJ found that Plaintiff was unable to perform any past relevant work.  AR 22.  Plaintiff had past relevant work as a smog checker and a welder.  AR 22-23.  The ALJ concluded, after consulting with the vocational expert,  physical and mental demands associated with Plaintiff's past relevant work exceeded his residual functional capacity.  AR 25.

4.     Step Five of the Sequential Evaluation

Plaintiff was 61 years old as of the date last insured.  AR 23.  He had a high school education and was able to communicate in English.  AR 23.  The ALJ found that considering Plaintiff's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform, and therefore, a finding of "not disabled" was appropriate.  AR 23-24.

The ALJ based her finding on the testimony of the vocational expert, Sala, who testified that with the limitations posed in the hypothetical at the hearing by the ALJ, Plaintiff could perform medium unskilled work as a check-in production clerk, linen room attendant/stock order filler, and stacker.  AR 24.  In her order, the ALJ included the vocational expert's erosion of the number of jobs existing in the national economy due to the limitation on overhead reaching.  AR 24.   The ALJ concluded, at this final step, that Plaintiff was not under a disability at any time from his alleged date of onset, July 24, 2004, through his date last insured, December 30, 2009.

1    **V.      Legal Standard**

2            A.      Standard of Review

3

4        According to 42 U.S.C. § 405(g), the Court's jurisdiction is limited to determining whether

5    the findings of fact in the ALJ's decision are supported by substantial evidence or were premised on

6    legal error.  42 U.S.C. § 405(g); see Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

7    Substantial evidence is relevant evidence that a reasonable person might accept as adequate in

8    support of a conclusion; it is "more than a mere scintilla but less than a preponderance."  Id.; see

9    also Richardson v. Perales, 402 U.S. 389, 401 (1971); Sandgathe v. Chater, 108 F.3d 978, 980 (9th

10   Cir. 1997).

11       To determine whether the ALJ's decision is supported by substantial evidence, courts review

12   the administrative record as a whole, weighing both the evidence that supports and detracts from the

13   ALJ's decision.  Sandgathe, 108 F.3d at 980 (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th

14   Cir. 1995.)  If the evidence is susceptible to more than one rational interpretation, the Court must

15   uphold the ALJ's conclusion.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  The trier of

16   fact, not the reviewing court, must resolve conflicting evidence, and if the evidence can support

17   either outcome, the reviewing court may not substitute its judgment for the judgment of the ALJ.

18   Id.; see also Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992).  An ALJ's decision will not

19   be reversed for harmless error.  Id.; see also Curry v. Sullivan, 925 F.2d 1127, 1131 (9th Cir. 1991).

20

21           B.      Definition and Determination of Disability

22

23       In order to qualify for disability insurance benefits, Plaintiff must demonstrate an "inability

24   to engage in any substantial gainful activity by reason of any medically determinable physical or

25   mental impairment which can be expected to result in death or which has lasted or can be expected

26   to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The SSA

27   utilizes a five-step sequential evaluation process in making a determination of disability.  20 C.F.R.

28   § 404.1520; see Reddick, 157 F.3d 715, 721.  If the SSA finds that the claimant is either disabled or

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1  not disabled at a step, then the SSA makes the determination and does not go on to the next step; if

2  the determination cannot be made, then the SSA moves on to the next step.  20 C.F.R. § 404.1520.

3       First, the SSA looks to the claimant's work activity, if any; if the claimant is engaging in

4  substantial gainful activity, he is not disabled.  20 C.F.R. § 404.1520(a)(4)(I).  Second, the SSA

5  considers the severity of impairments: claimant must show that he has a severe medically

6  determinable physical or mental impairment (or combination of severe impairments) which has

7  which has lasted or is expected to last twelve months or end in death.  20 C.F.R. §

8  404.1520(a)(4)(ii).  Third, the SSA considers whether a claimant's impairments meet or equal a

9  listing in 20 C.F.R. Part 404 Appendix 1.  If so, the claimant is deemed disabled.  20 C.F.R. §

10  404.1520(a)(4)(iii).  Fourth, the SSA considers the claimant's residual functional capacity ("RFC")

11  and past relevant work; if the claimant can still engage in past relevant work, he is not disabled.   20

12  C.F.R. § 404.1520(a)(4)(iv).  Fifth, the SSA considers whether, in light of the claimant's RFC and

13  age, education, and work experience, the claimant is able to make an adjustment to another

14  occupation in the national economy.  20 C.F.R. § 404.1520(a)(4)(v); 20 C.F.R. § 404.1560(c).  The

15  claimant has the initial burden of proving disability.  Reddick, 157 F.3d at 721.  It is only if a

16  claimant establishes an inability to perform his prior work at step four does the burden shift to the

17  SSA to show that the claimant can perform other substantial work that exists in the national

18  economy at step five.  Id.

19

20          C.    Credibility

21

22       In determining whether a claimant's testimony regarding subjective pain or other symptoms

23  is credible, the ALJ must engage in a two-step process.  Lingenfelter v. Astrue, 504 F.3d 1028,

24  1035-36 (9th Cir. 2007).  First, the ALJ must determine whether the claimant has submitted

25  objective medical evidence of the underlying impairment "which could reasonably be expected to

26  produce the pain or other symptoms alleged."  Id. (citing Bunnell v. Sullivan, 947 F.2d 341, 344 (9th

27  Cir. 1991).  Next, if the claimant meets this first test, and there is no evidence of malingering, the

28  ALJ can only reject the claimant's testimony about the severity of his symptoms by offering

13

1  specific, clear and convincing reasons for doing so.  Id. at 1036 (citing Smolen v. Chater, 80 F.3d

2  1273, 1281 (9th Cir. 1996)).  If the ALJ's credibility finding is supported by substantial evidence in

3  the record, the Court may not second-guess the ALJ's finding.  Thomas v. Barnhart, 278 F.3d 947,

4  959 (9th Cir. 2002); see also Morgan v. Comm'r Soc. Sec. Admin., 169 F.3d 595, 600 (9th Cir.

5  1999).

6

7                    D.    Reversal or Remand

8

9         If a court finds that the ALJ erred or that his findings are not supported by substantial

10 evidence, the court must decide whether to award benefits or remand the case for further

11 proceedings. Evidence should be credited in favor of the claimant and an immediate award of

12 benefits directed if the following three factors are met: (1) the ALJ has failed to provide legally

13 sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be

14 resolved before a determination of disability can be made, and (3) it is clear from the record that the

15 ALJ would be required to find the claimant disabled were such evidence credited. Harman v. Apfel,

16 211 F.3d 1172, 1178 (9th Cir. 2000) (citing Smolen, 80 F.2d at 1292. The decision of the district

17 court whether to remand for further development of the administrative record or to direct an

18 immediate award of benefits is a fact-bound determination subject only to review for abuse of

19 discretion. Id. at 1777; see also Lewin v. Schweiker, 654 F.2d 631, 635 (9th Cir. 1981) (holding that

20 a remand is necessary where the ALJ failed to make adequate findings but that a reversal is

21 appropriate where the record thoroughly developed and a rehearing would simply delay receipt of

22 benefits).

23

24 **VI.   Discussion**

25

26        Plaintiff argues that: (1) the ALJ erred in not giving proper weight to the opinions of

27 Plaintiff's treating physician Dr. Blackwell; and (2) the ALJ erred in finding that Plaintiff's

28 testimony was not credible.

1

United States District Court
For the Northern District of California

A.      Opinion of Treating Physician

2

3          Three types of physicians may offer opinions in Social Security cases: (1) those who directly

4    treated the plaintiff (treating physicians), (2) those who examined but did not treat the plaintiff

5    (examining physicians), and (3) those who did not directly treat or examine the plaintiff

6    (nonexamining physicians).  See Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).  A treating

7    physician's opinion is generally entitled to more weight than that of an examining physician, and an

8    examining physician's opinion is generally entitled to more weight than that of a nonexamining

9    physician.  Id.  The opinions of treating physicians are generally afforded more weight than the

10   opinions of nontreating physicians because treating physicians are employed to cure and have a

11   greater opportunity to know and observe the claimant.  See Smolen v. Chater, 80 F.3d 1273, 1285

12   (9th Cir. 1996).  If a treating physician's opinion is well supported by medically acceptable clinical

13   and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in

14   the record, it should be given controlling weight.  See 20 C.F.R. § 416.927(c)(2); 20 C.F.R. §

15   404.1527(d)(2) (same).

16          The ALJ "need not accept the opinion of any physician, including a treating physician, if that

17   opinion is brief, conclusory, and inadequately supported by clinical findings."  Thomas v. Barnhart,

18   278 F.3d 947, 957 (9th Cir. 2002); accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190,

19   1195 (9th Cir. 2004); see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (ALJ may

20   reject check-off reports that do not contain an explanation of basis for conclusions); Murray v.

21   Heckler, 722 F.2d 499, 501 (9th Cir. 1983) (expressing preference for individualized medical

22   opinions over check-off reports).  Because 20 C.F.R. § 416.927 contains guidelines for weighing

23   opinions from "acceptable medical sources" but none for weighing "other sources," an ALJ may

24   accord opinions from "other sources" less weight.  Gomez v. Chater, 74 F.3d 967, 970–71 (9th Cir.

25   1996).  However, at least where the treating doctor's opinion is not contradicted by another doctor, it

26   may be rejected only for "clear and convincing" reasons.  See Baxter v. Sullivan, 923 F.2d 1391,

27   1396 (9th Cir. 1991).  "Clear and convincing" reasons are required to reject the treating doctor's

28   ultimate conclusions.  Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).  Even if the treating

United States District Court
For the Northern District of California

1  doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion

2  without providing "specific and legitimate reasons" supported by substantial evidence in the record

3  for so doing.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).

4        In determining disability, the ALJ "must develop the record and interpret the medical

5  evidence."  Howard v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003).  Nonetheless, it remains the

6  plaintiff's burden to produce evidence in support of his disability claims.  See Mayes v. Massanari,

7  276 F.3d 453, 459 (9th Cir. 2001).  Moreover, the ALJ's duty to develop the record is triggered only

8  when there is "ambiguous evidence or when the record is insufficient to allow for proper evaluation

9  of the evidence."  Id. at 459–60.

10       Plaintiff argues that the ALJ failed to give specific and legitimate reasons for rejecting Dr.

11 Blackwell's opinions, and that this failure flies in the face of Ninth Circuit law.  Plaintiff cites a

12 great deal of case law but does not seem to connect it to his own situation.  He complains of the

13 ALJ's deferral to non-treating, non-examining state agency physicians, but both Dr. Vesali and Dr.

14 Leung examined Plaintiff, in 2008 and 2009, respectively.  See AR 21.  Dr. Orcutt also examined

15 Plaintiff, in 2005, in addition to reviewing the medical evidence.  AR 21.  These examining

16 physicians' opinions are not given as much weight as that of a treating physician, but Plaintiff's

17 description of them as non-examining physicians is incorrect.  All three of those examining

18 physicians found that Plaintiff was significantly less impaired by his injury than Dr. Blackwell

19 concluded in 2011.  Both Dr. Vesali and Dr. Leung concluded that Plaintiff had functional

20 limitations at or near the medium exertional level.  AR 279-80, 298.

21       Plaintiff claims that the ALJ erred when she claimed that Dr. Blackwell's opinion was not

22 supported by medically acceptable clinical and laboratory diagnostic techniques and was

23 inconsistent with the other evidence in the record.  Plaintiff points to various clinical findings and

24 test results from 2004 onwards that he argues support his disability claim, including the September

25 4, 2004 MRI, as well as a number of physical examinations showing limited range of motion of the

26 lumbar spine and positive straight leg raising bilaterally to 90 degrees.  AR 230, 271-72, 405, 361,

27 297, 318, 350, 344-45.

28

16

United States District Court
For the Northern District of California

1    The ALJ disregarded Dr. Blackwell's opinion in part because he provided a check-box style

2  form regarding Plaintiff's functional limitations in the 2011 Medical Source Statement, and that

3  opinion form was unsupported by his own treatment notes.  She observed that Dr. Blackwell's

4  reports from 2006 through 2008 note that Plaintiff was "doing fairly well" (AR 263-64, 267, 291),

5  "remains active" (AR 264), "mobility remains good" (AR 265-67), and that older treatment notes

6  reflect similar statements.  While the treatment notes support Plaintiff's claim that he was

7  experiencing pain, the level of extreme disability that Dr. Blackwell noted for the first time in his

8  2011 opinion is out of step with the many years of notes that precede it.  For example, in December

9  of 2010, Dr. Blackwell wrote that Plaintiff was doing relatively well and remained stable, and had

10  excellent back mobility.  AR 350.  Further, the ALJ pointed out that the objective diagnostic tests,

11  such as the MRI performed in September of 2004, showed only mild problems, with diffuse disc

12  bulges at two points but no impingement on the spinal nerve.  AR 20, 230.

13    The ALJ also noted the many years between Plaintiff's disability-causing injury (August

14  2004) and Dr. Blackwell's Medical Source Statement in 2011.  Only that 2011 evaluation, as

15  opposed to the rest of Dr. Blackwell's treatment notes, shows severe long-term disability, and it was

16  performed 7 years after the injury.  The contemporaneous evaluation by Dr. Blackwell very shortly

17  after the injury and the slightly later evaluations by the two state agency physicians all show a

18  milder picture.  This distance in time has several implications.  First, Plaintiff's condition may

19  naturally be getting worse with age.  Therefore, Dr. Blackwell's opinion of Plaintiff's level of

20  disability following physical exam in 2011 has limited relevance to the question of whether Plaintiff

21  was disabled in 2004, when he claims he was injured, all the way through 2009, which is the date

22  last insured.  Second, the 2011 evaluation states that Plaintiff was disabled since August 2, 2004.

23  AR 347.  That appears to be the date on which Dr. Blackwell first examined Plaintiff and marked

24  him temporarily unable to return to work – for three weeks.  AR 275.  While there are a number of

25  notes and forms from Dr. Blackwell from that August 2004 period, and a letter to the State

26  Compensation Insurance Fund stating his recommendation that Plaintiff remain on temporary total

27  disability, because the nature of his work "would be considered heavy" (AR 272), there is very little

28  follow-up from Dr. Blackwell in the five years between the date of injury and the date last insured.

United States District Court
For the Northern District of California

1    None of the notes from that five-year period opine as to Plaintiff's level of disability or his ability to

2    return to light or medium work.

3       When there is conflicting medical evidence in the record, a reviewing court should defer to

4    the ALJ's interpretation.  See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) ("Where

5    evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must

6    be upheld.").  Where the ALJ's decision is supported by substantial evidence in the record, the Court

7    should uphold that decision.  Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).  Substantial

8    evidence in the record supports the ALJ's opinion disregarding Dr. Blackwell's 2011 opinion, which

9    looked back seven years to the initial injury, and the lack of supporting detail in the record regarding

10    the subsequent five years until Plaintiff's date last insured.

12     **B.**      Testimony of Vocational Expert

14       Social Security Ruling 00-4p requires an ALJ who takes testimony from a vocational expert

15    about a particular job's requirements to determine whether that testimony is consistent with the

16    Dictionary of Occupational Titles ("DOT").  The ALJ must ask about any possible conflict between

17    the expert's evidence and the DOT.

18       Plaintiff claims that the ALJ failed to account for Plaintiff's functional limitation on

19    overhead reaching when she made her determination, and that this invalidates her analysis at step

20    five.  He argues that there are unresolved conflicts between the vocational testimony relied upon by

21    the ALJ as the basis for her denial and the DOT and that the ALJ did not appropriately resolve those

22    conflicts.  The three jobs identified at step five were check-in clerk, linen room attendant, and

23    stacker.  AR 24.  Plaintiff claims that the ALJ did not resolve conflicts between these positions and

24    his limitation on overhead reaching: the DOT lists all three of the jobs identified at step five as

25    requiring "frequent" reaching, which exists from one-third to two-thirds of the time.  See DOT

26    221.587-014; 222.387-030; 222.587-046.

27       The ALJ relied on vocational expert testimony to provide specific information about the

28    occupations in the DOT.  See Social Security Ruling 00-4p, 2000 WL 1898704.  The ALJ asked Ms.

1    Sala, the vocational expert, whether the representative occupations would have eroded numbers

2    based on Plaintiff's overhead reaching limitation.  AR 77.  While Plaintiff contends that there was

3    no acknowledgment by the ALJ of the conflicts between the reaching requirements and Plaintiff's

4    functional limitations, the transcript of the hearing shows a long colloquy between the ALJ and the

5    vocational expert on precisely the issue Plaintiff raises:  Plaintiff's functional limitations on

6    overhead reaching and the jobs the vocational expert cites.  AR 76-80.  The ALJ gave the vocational

7    expert a hypothetical that involved overhead reaching, and asked whether the job base would be

8    reduced because of that limitation.  AR 77-78.  The expert answered that there would be a five

9    percent reduction in jobs for a check-in position, a 30 percent reduction in jobs as a linen room

10   attendant, and a 10 percent reduction in jobs for the stacker position.  AR 78-79.  The expert noted

11   that many of stacker jobs would be inspector, tester, or clerical, and therefore not require overhead

12   reaching.  AR 79.  The ALJ questioned the expert on the sources she used to make her conclusions

13   and confirmed that the cited jobs were consistent with descriptions in the DOT.  In her written order,

14   the ALJ included the erosions cited by the vocational expert.  AR 24.

15          Plaintiff maintains that the ALJ did not resolve the conflicts, and cites Prochaska v. Barnhart,

16   454 F.3d 731 (7th Cir. 2006), for the proposition that it is error for an ALJ to fail to determine

17   whether a vocational expert's testimony is inconsistent with the DOT.  It was undisputed that the

18   ALJ in Prochaska did not ask whether the expert's analysis conflicted with the DOT, and that the

19   failure to do so was error.  454 F.3d at 735-36.  The dispute was over whether the error was

20   harmless.  The court stated that it "is not clear to us whether the DOT's requirements include

21   reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have

22   resolved with the expert's help.  We cannot determine, based on the record, whether the expert's

23   testimony regarding stooping or reaching was actually inconsistent with the DOT."  Id. at 736.

24          Here, however, the ALJ specifically asked the vocational expert what sources she relied on

25   in her testimony and whether her general job categories were compatible with the DOT.  The ALJ

26   asked:  "Ms. Sala, are the jobs that you cited consistent with descriptions in the DOT?" and Ms. Sala

27   answered that they were.  AR 80.  Further, all of the limitations raised by Dr. Blackwell's 2011

28   medical source statement were incorporated into the hypothetical posed to the vocational expert,

United States District Court
For the Northern District of California

1   including limitations on climbing stairs, balancing, stooping, crouching, kneeling ladders, heavy

2   machinery, and unprotected heights, along with the restriction on overhead bilateral reaching, as

3   well as the limitations based on time spent doing particular activities and the need for periodic

4   breaks and absences from work.  AR 69-75.  The ALJ complied with SSR 00-4p.

6       C.    <u>Plaintiff's Credibility</u>

8       Where the claimant establishes that medically determinable impairments exist and could

9   reasonably lead to the claimed symptoms, the ALJ must make a credibility finding that is

10  "sufficiently specific to make clear to the individual and any subsequent reviewers the weight the

11  adjudicator gave to the individual's statements and the reasons for that weight."  SSR 96-7p, 1996

12  WL 374186.  That finding must be supported by the record and the ALJ must not arbitrarily discredit

13  a claimant's subjective testimony.  <u>Thomas v. Banrhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002).  If

14  substantial evidence supports the ALJ's finding that the claimant is not credible, the Court should

15  not engage in second guessing.  <u>Id.</u>

16      To determine whether a claimant's testimony about subjective symptoms, including pain, is

17  credible, an ALJ engages in a two-step analysis.  First, the ALJ determines whether there is

18  objective medical evidence of an underlying impairment which could reasonably be expected to

19  produce the pain or other symtoms alleged.  <u>See Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir.

20  2007).  Second, if this first test is met and there is no evidence of malingering, the ALJ can reject the

21  claimant's testimony about the severity of the pain or symptoms by offering specific, clear, and

22  convincing reasons for doing so.  <u>See Smolen</u>, 80 F.3d at 1281.  Here, the ALJ concluded that while

23  Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged

24  symptoms, his "statements concerning the intensity, persistence and limiting effects of these

25  symptoms are not entirely credible."  AR 24, 22.

26      Plaintiff points, out, correctly, that the ALJ erred in describing his medications as limited to

27  non-narcotic pain relief.  AR 22.  As noted above, Plaintiff has taken Tylenol with codeine, a

28  narcotic, to help Plaintiff manage his pain.  It is also worth noting that the record shows that

United States District Court
For the Northern District of California

1   Plaintiff's initial prescription for Tylenol with codeine was from Dr. Chodai, a Kaiser physician, in

2   1997, in connection with head pain.  It is unclear whether Plaintiff has ever taken the drug to deal

3   with back pain.  See AR 228, 189, 204.  Dr. Blackwell appears to have prescribed Tramadol, a non-

4   narcotic pain reliever, for Plaintiff's back pain.  See id.  The ALJ's minor error regarding the

5   narcotic status of a single medication that Plaintiff began taking long before his relevant injury is not

6   sufficient to invalidate her conclusion as to Plaintiff's credibility.  The ALJ was correct in describing

7   the management of Plaintiff's condition as "conservative," and she noted, accurately, that there was

8   no evidence that claimant had sought more extensive treatment beyond brief physical therapy and

9   pain relief, such as steroid injections or surgery.  AR 22.  While Plaintiff and his treatment team

10  should not be penalized for managing his condition conservatively, the ALJ is correct that this

11  treatment is consistent with a milder injury than the one Plaintiff claims to suffer. The ALJ also

12  mentioned that Plaintiff saw his treating physician infrequently for follow-up, approximately two to

13  three times per year.  AR 22, 263-76, 290-93.  See Parra v. Astrue, 481 F.3d 742, 750-51 (9th Cir.

14  2007) (conservative course of treatment can support an ALJ's finding that a claimant's pain

15  testimony is not credible).

16          The ALJ also noted that Plaintiff's subjective pain complaints were not consistent with his

17  self-reported daily activities.  Plaintiff was able to engage in a full range of light daily activities,

18  including shopping, driving, taking care of his daily needs, and visiting with his grandchildren and

19  taking them on outings.  AR 20, 208-12.  The Ninth Circuit has noted that an ability to perform daily

20  activities may be inconsistent with the presence of a condition that would preclude all work activity.

21  See Curry v. Sullivan, 925 F.2d 1127, 1130 (9th Cir. 1990).

22          There is substantial evidence in the record to support the ALJ's credibility finding.

23

24  **VII.      Conclusion**

25          The Court HEREBY denys Plaintiff's motion for summary judgment and grants

26  Defendant's cross-motion for summary judgment.

27

28  **IT IS SO ORDERED.**

21

1

Dated: March 25, 2014

2

ELIZABETH D. LAPORTE
United States Chief Magistrate Judge

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California